### GREEN ISLAND WATER SUPPLY CO. v. TROJAN LAUNDRY CO.

(Supreme Court, Appellate Division, Third Department. May 22, 1908.)

EVIDENCE—PAROL EVIDENCE—AMBIGUOUS CONTRACT.

An application to a water company for water for a laundry plant called for water for laundry and manufacturing uses on a sliding scale of prices by which the price per 1,000 cubic feet diminished as the consumption increased, and provided that the supply should "be taken from a two-inch meter." The supply of water proved insufficient, and a second application like the first was made. The water company accepted the application, and water was also furnished through another two-inch meter. *Held*, in an action involving the question whether the water flowing through each meter was to be considered separately or as flowing through one meter in determining the price to be paid, that the quoted words were ambiguous, rendering parol evidence admissible to aid in the construction thereof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 2104–2106.]

Smith, P. J., and Sewell, J., dissenting.

Appeal from Trial Term, Albany County.

Action by the Green Island Water Supply Company against the Trojan Laundry Company. From a judgment for plaintiff, rendered on a trial before the court without a jury, defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Long & Maxwell (J. K. Long, of counsel), for appellant.
David McClure (J. P. O'Brien, of counsel), for respondent.

JOHN M. KELLOGG, J. Plaintiff furnished 1,541,734 cubic feet of water to the defendant's large laundry plant through two two-inch meters. Plaintiff furnishes water to its customers upon a sliding scale of prices, by which the price per 1,000 cubic feet diminishes as the consumption increases, and the question litigated is whether the water flowing through each meter is to be considered separately, or whether the water flowing through both meters is to be aggregated in determining the price to be paid. The Troy Steam Laundering Company formerly used this plant, and the plaintiff had supplied it with water through a two-inch lateral connecting it with the main. Defendant, upon taking charge of the plant, was enlarging the business, and requested the plaintiff to examine the works with the

view to furnishing it with water, and informed the plaintiff that it thought that the two-inch pipe would not supply the building, and that a four-inch pipe should be used. The plaintiff's representative said that the company would object to using a four-inch lateral with a six-inch main, as it might weaken the main, but would furnish all the water needed, and that, if the two-inch pipe would not answer, another pipe could be inserted, to which the defendant replied, in substance, that it did not care—"Give us the water; give us a dozen meters if you want to." An application upon the plaintiff's regular form for water customers was signed by the defendant, accepted by the plaintiff, and a duplicate kept by each party. The written application recited that the defendant requested that it be supplied with water, which it was to pay for at the established rates, and use in accordance with the established rules. It then recites several understood conditions, including the following: That the water shall be ascertained by meter loaned by the company, and, if it is injured by misuse or freezing, the consumer is liable; that the price for water is $1.75 per 1,000 cubic feet for the first 5,000 cubic feet per quarter, $1.45 for the second 5,000, $1.30 for the excess of 10,000 feet and less than 20,000, $1.15 for the excess of 20,000, and less than 30,000, $1 for the excess of 30,000 and less than 100,000, 75 cents in excess of 100,000 and less than 200,000, 50 cents for all water in excess of 200,000 cubic feet per quarter; that "the service desired for this property is water for laundry and manufactory uses. The supply is to be taken from a two-inch meter. The minimun rate is to be $6 per quarter, which will entitle the consumer to use not to exceed $6 worth of water in any quarter. Any excess of consumption in any one quarter is to be be charged for at the foregoing rates." The supply of water proved insufficient for the business, and the defendant was constantly asking for more water, and one or two changes were made, which were not effectual. It was then suggested that another two-inch lateral be used. The defendant asked what would be the cost, to which the plaintiff replied the cost of tapping fees would be all of the cost, to which the defendant assented, and the two-inch pipe was added, and the water furnished through the two meters. The defendant paid the cost of putting in the extra pipe. While the water was being furnished through the new pipe and meter, another form of application was sent to the defendant, in all respects like the first one which it signed. According to the plaintiff's version, this second application was signed by the defendant and furnished to the plaintiff immediately after the installation of the second meter. According to the defendant's version, some time after the second meter was in use its superintendent found a blank form upon his desk and thoughtlessly signed it, and put it in a pigeon hole in his desk, and it remained there until this dispute arose between the parties, when the plaintiff's superintendent asked him if he would let him take it, which he did. Whichever may be right about this, it appears that the plaintiff never furnished to the defendant any written acceptance of the second application. Much of this evidence was received under the objection that the defendant could not vary by parol evidence the terms of the written agreements, with the understanding that, after argument, the court would dispose of the·

question, and, if the evidence was stricken out, would note a proper exception. The evidence was stricken out, and defendant's exception noted, and the plaintiff had a judgment treating the amount passing through each meter as though furnished to a different party and a different place.

A water company, called by the statute a transportation company, is required to furnish to all of its customers alike a reasonable service at a fair price. Plaintiff's prices are named in the schedule in the application as the established rates. We may assume they are the reasonable rates which the company is authorized to charge, and its customers are required to pay, with or without special contract therefor. There is nothing in the schedule of rates, or in the form of application or in the evidence, which indicates that the rate is greater or less if the consumer is served through one or more meters, or that the rate is greater or less because the service is through a large or small meter. We therefore assume that the plaintiff makes no such distinction. The plaintiff prepared the form of the application and adopted its regulations and schedule of rates, and we assume they were intended to cover all service and all charges to all customers.

I do not think that the fact that two applications in the same language were signed with reference to the same property, under the circumstances of this case, conclusively indicates an intention to accept and pay for water under two separate contracts. The plaintiff was entitled to what water it needed in its business under the first application; and it is not easy to see what necessity or propriety there was for a second application, except to have the defendant acknowledge the receipt of the second meter, and to become responsible for damages to it in case of its injury by misuse or freezing. The plaintiff was bound to furnish the defendant's plant with water for the purposes agreed upon, upon its usual terms, and the amount of water so furnished was to be considered in fixing the rate. It is apparent from the rates established by the plaintiff that it can afford to furnish a customer a large quantity of water at a less rate per 1,000 cubic feet than a small quantity. There is no evidence from which the court can determine whether it is a greater cost to the plaintiff to furnish a given quantity of water through a four-inch meter or through two two-inch meters, or whether the price for water depends upon the size of the meter through which it is served. Those facts were necessarily important, and were matters with reference to which the plaintiff was fully informed, and we cannot assume by its remaining silent upon that subject that proof of the actual facts would have been beneficial to it. If it had another schedule which permitted it to charge a greater rate because of the size of the meters or number of the meters used for furnishing water to the same plant for the same use, that fact should have appeared. Unless an increased charge was permissible on account of the extra cost of service through two meters, an attempt to make such charge would be unreasonable, and unlawful. The only subject of contract between the parties was the supplying of water to the defendant's plant. The water was taken directly from the main into reservoirs where it was kept for use. The two supply pipes did not therefore furnish water for different purposes or uses, but each supplied such

reservoirs for the general uses of the plant. This was the use which both parties had in mind when the first application was made and at all times afterwards. Without regard to the number of applications, I think they refer to the same subject, and should be read together as one contract, and the defendant in having the price determined is entitled to have all the water furnished to the reservoirs during the quarter considered as a basis therefor.

The evidence stricken out clearly tended to show that there was no intention upon either part to make two separate and distinct contracts; and the opinion of the court fairly shows that such was its understanding of the facts, but it felt constrained to disregard such evidence, for the reason that it was considered as contradictory to the terms of the written agreements. The evidence stricken out did not tend to contradict or vary the terms of any written agreement. It tended to show that there was but one contract between the parties, and that it covered all water to be furnished. The new pipe was not inserted, and the new meter put in use under any separate contract. The application with reference to it, upon the defendant's theory, was first suggested several days after the meter was in actual use, and, upon the law applicable to public service corporations, there was no consideration upon which it can rest as a contract. As before stated, if delivering the water through a two-inch meter put upon the plaintiff an extra burden and thus constituted a consideration for the alleged new contract, it was its duty to show such fact. The only new contract shown which rests upon any consideration is to put in the extra two-inch meter in consideration that the defendant is to pay the cost of tapping and of putting in the pipe, and to be responsible if the meter is injured by misuse or freezing. I therefore favor a reversal of the judgment both upon the law and the facts.

A new trial should be granted, with costs to the appellant to abide the event. All concur, except SMITH, P. J., and SEWELL, J., who dissent.

COCHRANE, J. (concurring). The storm center in this case is the following brief sentence in a contract of considerable length, viz.:

"The supply is to be taken from a 2″ meter."

If that sentence is clear and unambiguous, the rule applies that parol evidence may not be received to change its meaning. But there is another rule of construction equally well established, that parol evidence may be received to explain an ambiguity or to show what the parties to a contract intend by the use of words employed by them not on their face clear or unmistakable. These rules of construction do not conflict, nor is the one an exception to the other. Thomas v. Scutt, 127 N. Y. 141, 27 N. E. 961. Considering the contract of February 1, 1905, in its entirety, the meaning of the sentence above quoted is not entirely clear. It is stated in the contract that water was desired for defendant's "laundry and manufacturing uses." Whether the clause "the supply is to be taken from a 2″ meter" which immediately follows the statement of the purpose for which the water is required is a limitation on the supply of water as confidently claimed by plaintiff, or

whether it is merely a description of the method of delivering and measuring that supply, is uncertain. This uncertainty is more pronounced in view of the indispensable necessity of a proper and sufficient water supply to conduct the business for which it was intended and the inherent difficulty in understanding why different prices should prevail dependent on the method of delivery rather than the amount delivered. Such uncertainty in the meaning of the contract at once opens the door for the introduction of parol evidence to properly understand what the parties intended. The circumstances under which they made their contract, and under which the defendant conducted its business so far as known to plaintiff, and the conversations between the representatives of the different parties, were all pertinent to this question, and I think the testimony which the learned trial justice struck from the case should have been retained and considered by him in construing this contract; not for the purpose of varying its terms, but for the purpose of ascertaining its meaning.

I am not unmindful that defendant is confronted with the argument that the writing of March 20th was unnecessary if the contract of February 1st covered the subsequently increased supply. That is a circumstance which should be considered in conjunction with all the other circumstances and in the light of such explanation as defendant may be able to give. Its force and weight need not now receive further consideration, as upon a new trial other facts may magnify or minimize its importance.