CODMAN et al. v. ADAMSON et al. .

(Supreme Court, Appellate Division, Third Department. January 6, 1909.)

1. CONTRACTS (§ 153*)—PRINCIPLES OF CONSTRUCTION.

In the construction of a contract every part thereof should be given effect, and made serviceable, if possible.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 734; Dec. Dig. § 153.*]

2. EVIDENCE (§ 450*)—PAROL EVIDENCE—AMBIGUITY—LEASE.  ·

A contract, giving defendants the right to mine on land for a specified royalty on ore removed, provided that defendants should take 20 tons of ore free from royalty as compensation for making roads and bridges to main road, "also the costs, etc., of the surveys and expenses attached thereto." Held, that the phrase quoted rendered the contract so ambiguous as to admit parol evidence to determine who should pay the expenses of the surveys of the land made necessary in defense of a subsequent action by a third person claiming the exclusive right to the mines.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2066–2070; Dec. Dig. § 450.*]

3. EVIDENCE (§ 445*)—VARYING WRITING BY PAROL—SUBSEQUENT AGREEMENT —LEASES.  ·

Parol evidence is admissible to show that, after the making of a written contract like the one in question, granting defendants the right to mine on land on payment of specified royalty, defendants were authorized by an oral agreement to make surveys of the land for the purpose of defending the title to the land in subsequent litigation, and reimburse themselves from such royalties.  ʹ

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2052–2065; Dec. Dig. § 445.*]

4. CONTRACTS (§ 65*)—CONSIDERATION—RIGHTS UNDER CONTRACT.

Where an action was brought by a third person involving the title to land on which defendants had been granted the right to mine on payment of royalties under a contract like the one in question, which action was being defended by defendants herein, there is a sufficient consideration for a contract by the landowner authorizing defendants to make surveys for the purpose of defending the title and reimburse themselves from the royalties.  ·

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 65.*]

Appeal from Trial Term, Warren County.

Action by Ella O. Codman and others against William B. Adamson and others. From a judgment for plaintiffs, defendants appeal. Reversed.

On or about March 15, 1892, Mrs. Sophronia Connors executed, acknowledged, and delivered to the defendants, as copartners doing business under the firm name of Baeder, Adamson & Co., a contract, of which the following is a copy: "This indenture made this 29th day of February, 1892, between Sophronia Connors, of the town of Minerva, N. Y., and Baeder, Adamson & Co. and Charles B. Adamson, Philadelphia, Pa., witnesseth: In consideration of one dollar and other good and valuable considerations, the said Sophronia Connors hereby sells, grants and conveys to Baeder, Adamson & Co. and Charles B. Adamson all her right, title and interest in the garnet or ore called garnet in the ground on the following described property, to wit: Being the west half of lot No. 57, township fourteen, Totten and Crossfield's purchase, in · the town of Minerva, Essex county, New York, and bounded as follows: On the north by lot No. 58, being marked 'State Land.' On the west by lot 64 occupied by H. C. Roblee. On the south by lot 56 owned by Harrison Roblee.

On the east by the east half of said lot No. 57—with full right and privilege to remove the rubbish to some convenient place or places and dig, mine and carry away said garnet on or from said lands each and every year so long as said mining can be made profitable, and said Baeder, Adamson & Co. and Charles B. Adamson agree to pay said Sophronia Connors a royalty of five dollars for each twenty-two hundred and forty pounds taken by them from said lands and to be paid for before loading on cars at North creek. Said ' Sophronia Connors to allow said Baeder, Adamson & Co. and Charles B. Adamson twenty tons of garnet free from royalty as compensation for making roads and bridges to main road also the cost, etc., of the surveys and the expenses attached thereto. In witness whereof the parties hereto have set their hands and seals as of the day and date above written."

The property referred to in the foregoing contract consisted of about 80 acres. Soon after the delivery of the contract, an action was instituted against one Eldridge, who was conducting mining operations on said property, and who was doing so under these defendants, in which action it was claimed by the plaintiff therein that he, and not the defendants or Eldridge, had the right to take the ore from the property. To that action Mrs. Connors was a party defendant; her title being disputed, as well as that of Eldridge and these defendants, whose claim of title was derived from her. Expensive surveys became necessary for the purpose of establishing her title to the property in that litigation. The defendants herein defended that action, and it is claimed by them that she verbally authorized such surveys to be made by them and directed that the expense thereof should be deducted from the royalties to which she might become entitled under said contract. The litigation resulted in the establishment of her title.

Mrs. Connors died in the year 1894. This is an action by her heirs at law to recover royalties which accrued under said contract for garnet mined in the years 1902, 1903, and 1904. The defendants claim that by reason of the aforesaid facts such royalties are subject to the expense of the surveys made as aforesaid, which exceeds the amount of such royalties, and which contention on their part has been determined by the trial justice to be without merit.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Rockwood & Scott (Nash Rockwood, of counsel), for appellants.

Jenkins, Kellogg & Barker (J. A. Kellogg, of counsel), for respondents.

COCHRANE, J.· A serious and interesting question arises as to whether the cause of action, if any, for royalties under such a contract as the one in question, belongs to the heirs at law of Mrs. Connors or to her personal representatives. As the judgment must be reversed for other reasons, it is unnecessary now to determine that question.

Plaintiffs' further difficulty arises over the concluding sentence in the said contract, as follows:

"Said Sophronia Connors to allow said Baeder, Adamson & Co. and Charles B. Adamson twenty tons of garnet free from royalty as compensation for making roads and bridges to main road also the cost, etc., of the surveys and the expenses attached thereto."

Plaintiffs' position in regard to this provision is that 20 tons of garnet have therein been allowed defendants, which is to include roads, bridges, and surveys and expenses attached thereto, and that the contract is therefore conclusive against the defendants' claim to compensation for such surveys. I am constrained to disagree with plaintiffs. The contract in my opinion is on its face ambiguous. It may be read with the meaning which plaintiffs seek to attach thereto, and it may

also be understood as meaning that the 20 tons of garnet were to cover only the roads and bridges, and that, in addition to such allowance, Mrs. Connors was to allow for the surveys and expenses attached thereto. It seems to me that the latter construction can be urged with even more plausibility than the former. Should we omit the words "also the cost, etc., of the" there would be no reasonable doubt that plaintiffs' interpretation would be correct. By well-understood rules of construction, however, we must give the contract a meaning, if possible, which will make every part thereof serviceable, and it may very well be that the application of such rule requires a special significance to be attached to the words above quoted, and, if that be so, the defendants' interpretation must prevail. In any event, there is such a doubt and ambiguity appearing from the instrument itself as to make applicable the rule that parol evidence may be received, not for the purpose of changing the meaning of the contract, but for the purpose of explaining the ambiguity and showing what the parties actually intended. Thomas v. Scutt, 127 N. Y. 141, 27 N. E. 961; Morison v. American Telephone & Telegraph Company, 126 App. Div. 575, 110 N. Y. Supp. 801; Green Island Water Supply Company v. Trojan Laundry Company, 126 App. Div. 584, 110 N. Y. Supp. 508. It was established at the trial by oral evidence that Mrs. Connors, on the day when she made the contract, and thereafter, litigation as to her title to the property being then imminent or pending, told the representatives of the defendants to have the surveys made at her expense and deduct the cost thereof from her interest in the garnet. She also knew then that such expense would probably far exceed her royalties from 20 tons of garnet, which would amount to only $100. It is quite clear that she did not when making her contract intend to limit her entire liability for surveys, bridges, roads, etc., to this latter amount. The trial justice disregarded this oral evidence evidently believing that the written contract was conclusive. In this I think he was mistaken. Had this evidence been considered, it would have explained the ambiguity in the instrument and made clear the intention of the parties as therein carelessly and inartificially expressed.

This oral evidence should also have been considered on another theory. The contract did not require defendants to defend the title of Mrs. Connors or establish her right to the property. Neither did it require them to mine any ore therefrom, but it simply permitted them to do so at such times and in such quantities as they desired. It was to the interest of Mrs. Connors to have ore mined so that she might receive royalties, but the defendants were at liberty to cease operations, or to refrain from operations at their pleasure. They could not well proceed in the face of the litigation in which her title was assailed, and were not obliged to do so. An agreement therefore by her to defend the litigation with a view to having ore mined by the defendants, which they were not by the original contract bound to mine, was a valid agreement based on a good consideration. Again, she was a party defendant to the Eldridge litigation, in which her title was attacked, and in which, as it also appears, it was claimed that she had executed to the plaintiff in that litigation a contract similar to the one in question and prior thereto. She had a direct and personal pecuniary in-

terest in that litigation. A judgment adverse to her therein would have nullified her contract with defendants. That litigation was being defended by these defendants, and she essentially shared in the fruits of their success. It was in reference to that litigation that she authorized these defendants to make the surveys and reimburse themselves from her royalties. There was ample consideration for a new and independent agreement on her part to pay the expenses of such surveys, even though such expenses were covered in the written contract by the 20 tons of garnet as therein expressed.

The judgment must be reversed on the law and facts, and a new trial granted, with costs to the appellants to abide the event. All concur, except SMITH, P. J., not voting.